Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

FILED
U.S. DISTRICT COURT
DISTRICT OF COLORADO

# UNITED STATES DISTRICT COURT

2019 FEB -4  AM 9:38

for the

_____ District of _____

JEFFREY P. COLWELL
CLERK

BY_____ DEP. CLK

MeLissA M. Goodson

_____
Plaintiff(s)
*(Write the full name of each plaintiff who is filing this complaint.
If the names of all the plaintiffs cannot fit in the space above,
please write "see attached" in the space and attach an additional
page with the full list of names.)*

MegAn J. Brennan
Post Master General
United States Postal Service
(Western) AreA Agency

_____
Defendant(s)
*(Write the full name of each defendant who is being sued. If the
names of all the defendants cannot fit in the space above, please
write "see attached" in the space and attach an additional page
with the full list of names.)*

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. '19 - CV - 00301
*(to be filled in by the Clerk's Office)*

Jury Trial: *(check one)*  ☐ Yes  ☐ No

## COMPLAINT FOR EMPLOYMENT DISCRIMINATION

I.    **The Parties to This Complaint**

A.    **The Plaintiff(s)**

Provide the information below for each plaintiff named in the complaint.  Attach additional pages if
needed.

Name                  MelissA Goodson
Street Address        5233 UrsulA Way
City and County       Denver
State and Zip Code    Colorado 80239
Telephone Number      303-596-4924
E-mail Address        AnnLadyWhite.63 g.COM

B.    **The Defendant(s)**

Provide the information below for each defendant named in the complaint, whether the defendant is an
individual, a government agency, an organization, or a corporation.  For an individual defendant,
include the person's job or title *(if known)*.  Attach additional pages if needed.

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

Defendant No. 1

Name                                Char ErenshAFt

Job or Title *(if known)*           MANAGER Labor Relations

Street Address                      7500 E 53rd Place E

City and County                     Denver

State and Zip Code                  Colorado 80266

Telephone Number

E-mail Address *(if known)*


Defendant No. 2

Name                                Glen ErFman

Job or Title *(if known)*           Operation Support Specialist

Street Address                      7500 E 53rd PlacE

City and County                     Denver

State and Zip Code                  Colorado 80266   Room 1134

Telephone Number

E-mail Address *(if known)*


Defendant No. 3

Name                                LAWANDA Davis

Job or Title *(if known)*           Union Steward

Street Address                      7540 E 53rd PlacE Room 113

City and County                     Denver

State and Zip Code                  Colorado 80266

Telephone Number

E-mail Address *(if known)*


Defendant No. 4

Name

Job or Title *(if known)*

Street Address

City and County

State and Zip Code

Telephone Number

E-mail Address *(if known)*

**C.    Place of Employment**

The address at which I sought employment or was employed by the defendant(s) is

| | |
|---|---|
| Name | United States Postal Service |
| Street Address | 7540 E 53rd Place |
| City and County | Denver |
| State and Zip Code | Colorado 80266 |
| Telephone Number | |

## II.    Basis for Jurisdiction

This action is brought for discrimination in employment pursuant to *(check all that apply)*:

☒    Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (race, color, gender, religion, national origin).

*(Note: In order to bring suit in federal district court under Title VII, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☐    Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634.

*(Note: In order to bring suit in federal district court under the Age Discrimination in Employment Act, you must first file a charge with the Equal Employment Opportunity Commission.)*

☒    Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117.

*(Note: In order to bring suit in federal district court under the Americans with Disabilities Act, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☐    Other federal law *(specify the federal law)*:    SEE Exhibit B

☐    Relevant state law *(specify, if known)*:

☐    Relevant city or county law *(specify, if known)*:

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

## III.   Statement of Claim

Write a short and plain statement of the claim.  Do not make legal arguments.  State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought.  State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct.  If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph.  Attach additional pages if needed.

A.   The discriminatory conduct of which I complain in this action includes *(check all that apply)*:

☐   Failure to hire me.

☐   Termination of my employment.

☐   Failure to promote me.

☒   Failure to accommodate my disability.

☐   Unequal terms and conditions of my employment.

☒   Retaliation.

☐   Other acts *(specify)*: _____

*(Note:  Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.)*

B.   It is my best recollection that the alleged discriminatory acts occurred on date(s)

October

C.   I believe that defendant(s) *(check one)*:

☒   is/are still committing these acts against me. *2015 SEE (Narrative)*

☐   is/are not still committing these acts against me.

D.   Defendant(s) discriminated against me based on my *(check all that apply and explain)*:

☒   race   _____

☐   color   _____

☐   gender/sex   _____

☐   religion   _____

☐   national origin   _____

☐   age *(year of birth)*   _____   *(only when asserting a claim of age discrimination.)*

☒   disability or perceived disability *(specify disability)*

_____

E.   The facts of my case are as follows.  Attach additional pages if needed.  *SEE*

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

*(Note: As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, or the charge filed with the relevant state or city human rights division.)*

## IV. Exhaustion of Federal Administrative Remedies

A.     It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding the defendant's alleged discriminatory conduct on *(date)*

*October 2013 d Amended November 29, 2013*

B.     The Equal Employment Opportunity Commission *(check one)*:

☐     has not issued a Notice of Right to Sue letter.

☒     issued a Notice of Right to Sue letter, which I received on *(date)*   *November 7, 2018*

*(Note: Attach a copy of the Notice of Right to Sue letter from the Equal Employment Opportunity Commission to this complaint.)*

C.     Only litigants alleging age discrimination must answer this question.

Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding the defendant's alleged discriminatory conduct *(check one)*:

☐     60 days or more have elapsed.

☐     less than 60 days have elapsed.

## V. Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages. *The relevant background Narrative. The U.S.P.S has A proven record of employee discrimination continuously violating the Americans with Disability Act, As amended 42. U.S.C 12101. For this Asking for punitive damages Amount of $125,000*

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

## VI.   Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.       For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:    *February 5th 2019*

Signature of Plaintiff    *M Gooden*
Printed Name of Plaintiff    *Melissa Gooden*

### B.       For Attorneys    *SEE Exhibit B Motion For Appointment Counsel*

Date of signing:    _____

Signature of Attorney    _____
Printed Name of Attorney    _____
Bar Number    _____
Name of Law Firm    _____
Street Address    _____
State and Zip Code    _____
Telephone Number    _____
E-mail Address    _____

# U.S. EQUAL EMPLOYMENT OPPROTUNITY COMISSION

## Office of Federal Operations

## P.O. Box 77960

## Washington, DC 20013

Melissa M. Goodson, a/k/a
Leisa C.,
Complainant

v.

Megan J. Brennan
Postmaster General, United States Postal Service,
Agency.

Request No. 0520180502

Appeal No. 0120172272

Hearing No. 541-2014-00128X

Agency No. 1E-801-0006-14

## **Narrative**

The plaintiff Goodson started her career at the United States Post Office (USPS), in November 1997. Goodson applied for the position of Mail Processing Clerk in automation at the General Mail Facility 7540 East 53rd Place, Denver, Colorado. According to the job description, this position "requires arduous physical exertion involving prolonged standing, throwing, reaching, and may involve lifting sacks of mail up to 80 pounds." It is undisputed that, Goodson performed her duties in a competent, entirely satisfactory manner.

In July 2000 Goodson sustained an on-the-job injury which entailed a sprained shoulder and upper right disorder of the bursae tendons in the right shoulder region. Goodson filed a claim with the Department of Labor, and it was accepted. This injury led to her being assigned to temporary restrictions. These restrictions became permanent in 2005. Before the injury, Goodson had no disciplinary actions bought against her by the USPS.

Soon after Goodson's restrictions were applied. Her problems began. Goodson asserts that the USPS and its personnel has failed to accommodate her disability. Thereby, violating the Americans with Disabilities Act, as amended, 42 U.S.C. §§ 12101. And 42 U.S. Code § 1983.Civil action for deprivation of rights.

Beginning in, September 2004. Goodson's hours were changed from (1:30p.m. to 10:00p.m.) to (4:30p.m. to 1:00a.m.) This change was done by Yvonne Rodriquez (Supervisor of Distribution). Goodson was the only employee reassigned, in her work area. The Employee Labor Manual states that management can change an employee's hours up to 1½ hours. If they are more than 2 hours. Management is required to notify the union in writing. Management did not notify the union, before reassigning Goodson's hours. Therefore, management violated the Employee Labor Manual. When Goodson asked Rodriquez why her hours were changed? Rodriquez responded by saying that the only way for Goodson to get back her hours of operations, was to get released from her restrictions. This response plus the action of the changed hours led Goodson to file her first grievance. This grievance process later became an EEO complaint against Rodriquez. This led to a mediation process. The outcome of the mediation, Goodson received a limited duty assignment working on Delivery Barcode Computerizing System (DBCS). 4- 6 hours in automation lifting 20-25 pounds above shoulder level. Later Goodson's original hours of operations were restored. Therefore, settling the complaint. (See ROI 152.) After the complaint was settled. Goodson was subjected to disparate treatment from Rodriquez, who was, inter alia, in charge of employee scheduling. First, Goodson's machine automation partner, was removed. Next, Goodson was assigned to automation machines that continuously broke down, which interfered with production. And lastly, Goodson was partnered with different people who were lazy and didn't do their fair share of working together to get the mail processed and dispatched. Goodson tried to bid to another pay location with a different supervisor, Dale Nicholson,

2

Bid# 9096178. Her bid was denied. Reason stated as "medical suitability to determine if she could perform the essential functions of the job."

In 2005, then Coordinator Char Ehrenshaft and the District Reasonable Accommodation Committee (DRAC). Made the determination that Goodson did not fit the criteria for Rehabilitation Act of 1973. And that her injury did not limit major life activity. The agency continued to deny Goodson's bids stating that "you can bid for any job vacancies that is posted. You will not be awarded bid assignments. You will be offered a reasonable accommodation to determine if the agency, can accommodate those restrictions as they relate to specific jobs." (See ROI 188-190, 275). The DRAC was offering Goodson the same limited duty assignment offered in 2004, which was to remain in Rodriquez's work section. Goodson filed an EEO complaint #1E-801-0061-05, against the USPS for discrimination based on physical disability. Goodson was considered an unassigned regular employee placed in a pending status based on her restrictions. Goodson had been awarded bids only to have management inform her, that based on her restrictions she was not eligible for these positions. On January 29, 2007, Goodson received a permanent modified job assignment through a settlement agreement with Judith Sandoval (Postal Counsel). This agreement dropped Goodson's EEO complaint #1E-801-0061-05. This job assignment entailed a clerk inputting data into the Transportation Information Management Evaluation System (TIMES). (See ROI 0082, 00213, 00212.)

On January 12, 2010, the USPS rescinded this modified job assignment as a clerk for the (TIMES position). They stated that it "was not a necessary task." The National Reassessment Program (NRP) also stated that there "was no work available to fit within Goodson's restrictions." Therefore, Goodson was put on non-paid duty status. Over 18 months later, on August 17, 2011. Goodson received a duty status letter stating that she had been off from work since January 12, 2010. And that she had not submitted acceptable documentation to support her absences. Goodson reported to work on August 20, 2011. Informing Gerome Warner (Manager of Operations), that she was off work because the USPS and the NRP rescinded her modified job assignment. Goodson was then sent home again. Because she arrived without her medical documentation. And she was advised by the Human Resource Department to contact her supervisor. On August 22, 2011, Goodson met with Pete Myers (Supervisor). To explain her absence, and her need to return to work. On September 2, 2011, Goodson met again with Pete Myers (Supervisor). A Linda Sanfilippo (District Manager of NRP), was also in attendance. At this meeting, Goodson was told that a search for work was done in the following categories:

- Same craft, same facility, same tour;
- Different craft, same facility, same tour;
- Same craft, same facility, different hours;
- Different craft, same facility, different hours.

After this search and being reassessed under the NRP for the 2nd time. It was determined that Goodson would remain in non-pay status. She was sent home again. On September 27, 2011,

Goodson filed a complaint with the Merit System Protection Board (MSPB). Docket # DE-0353-12-0001-I-1, Goodson vs. United States Postal Service. The appeal #201103619.

On October 21, 2011, there was a meeting with Yvonne Rodriquez (Manager Distribution Operations) and Pete Myers (Supervisor Distribution Operations). These individuals informed Goodson that her previous assignment on Tour 3 (1:30pm to 10:00pm) inputting data into mail device scanner was no longer available. Instead Goodson was offered a limited duty assignment of Manual Distribution Clerk, working Tour 1 (10:00pm to 6:00am). Goodson was told she was holding this limited duty assignment for Yvette Morales, who was on a detail. And that they would conduct another search to determine whether there were any other necessary available duties within her physical restrictions. Later Goodson talked with Lawanda Davis (Union Steward). And she was advised to apply for bids. On November 28, 2011, Goodson was awarded bid# 95768395 for job posting 42056. This bid was denied.

On February 22, 2012, Goodson met with Char Ehrenshaft (Human Resource Manager), and Brian Odom (Postal Attorney), for mediation regarding the complaint # DE-0353-12-0001-I-1, filed with the MSPB. Goodson was offered a settlement. Which she declined. Goodson opted to have a hearing, so that she could present her evidence.

On May 24, 2012, Goodson arrived with her witness and evidence to the hearing. Where she was informed that the Administrative Judge would not be holding a hearing. Instead, Goodson was offered a settlement agreement and release for

5

$7,000 as compensation for being out of work from September 2, 2011 to October 21, 2011. Goodson accepted this settlement. The job position offer was a Distribution Clerk on Tour 1. The USPS stated that the October 2011 assignment was "part of settlement agreement whereas she received money. (See ROI 0066) This settlement agreement was with Brian Odoms (Postal Counsel).

On July 30, 2013, Goodson received a letter of warning from Mary Buckley (Supervisor). It stated that there could be a possibility that Goodson could be terminated from employment. Because of not being in regular attendance. An investigative interview was conducted. And Goodson explained that because of the reassignment to Tour 1. Her health has suffered. And that a job position on Tour 3, would work better for her health. Goodson also stated that her FMLA case has been re-opened.

On October 28, 2013, Goodson became aware that Postal Support Employees (PSE) were still performing the job position that was rescinded from her on October 21, 2011. The job position that the USPS deemed "not a necessary task." In response to why these employees were doing "not a necessary task." Yvonne Rodriquez (Manager Distribution Operations) says that she uses PSEs as a supplemental force. Who are available to fill positions for employees who are sick or on vacation. These PSEs perform various duties including inputting data into mail device scanners and assisting expeditors. (See ROI 0012-14-00218-223). Later Goodson finds out that these PSE employees were being paid a higher pay grade as

expeditors, which was a Level 7. When Goodson performed the
same job in 2011, she was paid grade Level 6.

On November 22, 2013, Goodson's settlement agreement
position on Tour 1, was revoked. (See ROI 0066) This action
placed Goodson as an unassigned regular. And this gave way to
her being placed in an involuntary residual assignment that
required qualifications and testing. This position was for Sales
Service Associate/Window Clerk. Goodson received a letter
stating that she was to be reassigned to a Window Clerk
position. Char Ehrenshaft (Human Resource Manager), says that
she had no knowledge of the November letter being sent.
However, Ehrenshaft testified that the November letter was a
placement letter and not a reassignment letter. Ehrenshaft says
she had the union steward Lawanda Davis review the
unassigned regulars and that she had no knowledge of
regulations and policies. (See Affidavit Testimony Char
Ehrenshaft). (Glen Erfman contradicts this statement. (Erfman
states that Ehrenshaft places employees into job positions. And
that she determines what the employees can perform.  And the
duties of those assigned positions. It was determined that
Ehrenshaft gave Erfman a list of employees that she wanted
placed. (See Affidavit Testimony Glen Erfman) Goodson had
not the knowledge, skill or ability requirements for this Window
Clerk position. This position required at least a year experience,
which Goodson did not have. Later Susan Talbot (Western Area
Resource Manager) questioned several management officials
including Char Ehrenshaft, Glen Erfman, and Yvonne
Rodriquez, about their decision of reassignment. Talbot asked

"why is the window clerk going on the residual vacancies? Are any of the unassigned regulars a level 7 with window clerk experience? If not, it shouldn't go on the list, as you don't make involuntary placements into higher levels." Shawn Weston (EEO/ADR/ Compliance) also added "honestly, I am confused by what you are doing, but technically, I guess if you have 5 customer service positions." Goodson was not in the level 7 pay grade and she did not have Window Clerk experience. Also, this decision of reassignment violated the Labor contract which states "involuntarily assignment with the senior employee, when there is more than one residual vacancy. The employee will be given an option and be awarded their choice based on seniority." Goodson was not given an option or choice. (See ROI 0023-0025.) The training for Window Clerk was on the clock. And it was mandatory that you qualify. Or you could be subject to firing, dismissal, or removal from the premises. Goodson failed in qualifying for the Window Clerk position. And remained an unassigned regular without a duty assignment. And without offer for accommodations. Goodson filed grievances with the union for placing limited duty employees into bid assignments, which violated labor contract laws. The USPS is obligated to replace rescinded assignments, with those with reasonable accommodations.

Through the next few years. The USPS continued to not accommodate Goodson's physical disability. On February 18th, 2015, Goodson provided medical documentation to the medical unit in the Administrative Building, per her primary care physician's recommendation. Her doctor recommended that due

to her hypertension and well as other health issues. A tour working daytime shifts or evenings shifts would be better suited to for Goodson's health issues. The USPS denied this request. March 2015, Goodson was still in the status as being a full time unassigned regular. Which placed Goodson in the power of management to place her in any involuntary assignment positions. This forced Goodson to bid on an assignment. Instead of being placed in an assignment position by management. Goodson was awarded a bid for Mark-Up Clerk bid # 71127034. Job posting 98850 on Tour 3 (2:30 – 11:30pm). Goodson provided medical certification to medical unit. And started her bid position at Holy Building. On the 5th day of training. Goodson was called into the office of Lorraine Pruett (Manager of Operations). Goodson was informed, that she would have to report back to the General Mail Facility.

On December 2015, Goodson was awarded bid #71423470, Mail processing Clerk SPSS Tour 3. And within 14 days this bid was disallowed. The actions of the USPS have forced Goodson to modify)her medical restrictions doctors' orders.

In conclusion, in the relevant background history accounted here. The United States Postal Service has a proven record of employee discrimination against Goodson. They have continuously violated the Americans with Disabilities Act, as amended, 42 U.S.C. §§ 12101. This is shown by the repeated rescinding of Goodson's job positions. And not making accommodations for her proven disability. The USPS personnel have also violated 42 U.S. Code § 1983. Civil action for

deprivation of rights. This is shown by proven evidence of certain persons in supervisory positions.

## Narrative

The plaintiff Goodson started her career at the United States Post Office (USPS), in November 1997. Goodson applied for the position of Mail Processing Clerk in automation at the General Mail Facility 7540 East 53rd Place, Denver, Colorado. According to the job description, this position "requires arduous physical exertion involving prolonged standing, throwing, reaching, and may involve lifting sacks of mail up to 80 pounds." It is undisputed that, Goodson performed her duties in a competent, entirely satisfactory manner.

In July 2000 Goodson sustained an on-the-job injury which entailed a sprained shoulder and upper right disorder of the bursae tendons in the right shoulder region. Goodson filed a claim with the Department of Labor, and it was accepted. This injury led to her being assigned to temporary restrictions. These restrictions became permanent in 2005. Before the injury, Goodson had no disciplinary actions bought against her by the USPS.

Soon after Goodson's restrictions were applied. Her problems began. Goodson asserts that the USPS and its personnel has failed to accommodate her disability. Thereby, violating the Americans with Disabilities Act, as amended, 42 U.S.C. §§ 12101. And 42 U.S. Code § 1983.Civil action for deprivation of rights.

1

Beginning in, September 2004. Goodson's hours were changed from (1:30p.m. to 10:00p.m.) to (4:30p.m. to 1:00a.m.) This change was done by Yvonne Rodriquez (Supervisor of Distribution). Goodson was the only employee reassigned, in her work area. The Employee Labor Manual states that management can change an employee's hours up to 1½ hours. If they are more than 2 hours. Management is required to notify the union in writing. Management did not notify the union, before reassigning Goodson's hours. Therefore, management violated the Employee Labor Manual. When Goodson asked Rodriquez why her hours were changed? Rodriquez responded by saying that the only way for Goodson to get back her hours of operations, was to get released from her restrictions. This response plus the action of the changed hours led Goodson to file her first grievance. This grievance process later became an EEO complaint against Rodriquez. This led to a mediation process. The outcome of the mediation, Goodson received a limited duty assignment working on Delivery Barcode Computerizing System (DBCS). 4- 6 hours in automation lifting 20-25 pounds above shoulder level. Later Goodson's original hours of operations were restored. Therefore, settling the complaint. (See ROI 152.) After the complaint was settled. Goodson was subjected to disparate treatment from Rodriquez, who was, inter alia, in charge of employee scheduling. First, Goodson's machine automation partner, was removed. Next, Goodson was assigned to automation machines that continuously broke down, which interfered with production. And lastly, Goodson was partnered with different people who were lazy and didn't do their fair share of working together to get the mail processed and dispatched. Goodson tried to bid to another pay location with a different supervisor, Dale Nicholson,

2

Bid# 9096178. Her bid was denied. Reason stated as "medical suitability to determine if she could perform the essential functions of the job."

In 2005, then Coordinator Char Ehrenshaft and the District Reasonable Accommodation Committee (DRAC). Made the determination that Goodson did not fit the criteria for Rehabilitation Act of 1973. And that her injury did not limit major life activity. The agency continued to deny Goodson's bids stating that "you can bid for any job vacancies that is posted. You will not be awarded bid assignments. You will be offered a reasonable accommodation to determine if the agency, can accommodate those restrictions as they relate to specific jobs." (See ROI 188-190, 275). The DRAC was offering Goodson the same limited duty assignment offered in 2004, which was to remain in Rodriquez's work section. Goodson filed an EEO complaint #1E-801-0061-05, against the USPS for discrimination based on physical disability. Goodson was considered an unassigned regular employee placed in a pending status based on her restrictions. Goodson had been awarded bids only to have management inform her, that based on her restrictions she was not eligible for these positions. On January 29, 2007, Goodson received a permanent modified job assignment through a settlement agreement with Judith Sandoval (Postal Counsel). This agreement dropped Goodson's EEO complaint #1E-801-0061-05. This job assignment entailed a clerk inputting data into the Transportation Information Management Evaluation System (TIMES). (See ROI 0082, 00213, 00212.)

3

On January 12, 2010, the USPS rescinded this modified job assignment as a clerk for the (TIMES position). They stated that it "was not a necessary task." The National Reassessment Program (NRP) also stated that there "was no work available to fit within Goodson's restrictions." Therefore, Goodson was put on non-paid duty status. Over 18 months later, on August 17, 2011. Goodson received a duty status letter stating that she had been off from work since January 12, 2010. And that she had not submitted acceptable documentation to support her absences. Goodson reported to work on August 20, 2011. Informing Gerome Warner (Manager of Operations), that she was off work because the USPS and the NRP rescinded her modified job assignment. Goodson was then sent home again. Because she arrived without her medical documentation. And she was advised by the Human Resource Department to contact her supervisor. On August 22, 2011, Goodson met with Pete Myers (Supervisor). To explain her absence, and her need to return to work. On September 2, 2011, Goodson met again with Pete Myers (Supervisor). A Linda Sanfilippo (District Manager of NRP), was also in attendance. At this meeting, Goodson was told that a search for work was done in the following categories:

- Same craft, same facility, same tour;
- Different craft, same facility, same tour;
- Same craft, same facility, different hours;
- Different craft, same facility, different hours.

After this search and being reassessed under the NRP for the 2nd time. It was determined that Goodson would remain in non-pay status. She was sent home again. On September 27, 2011,

4

Goodson filed a complaint with the Merit System Protection Board (MSPB). Docket # DE-0353-12-0001-I-1, Goodson vs. United States Postal Service. The appeal #201103619.

On October 21, 2011, there was a meeting with Yvonne Rodriquez (Manager Distribution Operations) and Pete Myers (Supervisor Distribution Operations). These individuals informed Goodson that her previous assignment on Tour 3 (1:30pm to 10:00pm) inputting data into mail device scanner was no longer available. Instead Goodson was offered a limited duty assignment of Manual Distribution Clerk, working Tour 1 (10:00pm to 6:00am). Goodson was told she was holding this limited duty assignment for Yvette Morales, who was on a detail. And that they would conduct another search to determine whether there were any other necessary available duties within her physical restrictions. Later Goodson talked with Lawanda Davis (Union Steward). And she was advised to apply for bids. On November 28, 2011, Goodson was awarded bid# 95768395 for job posting 42056. This bid was denied.

On February 22, 2012, Goodson met with Char Ehrenshaft (Human Resource Manager), and Brian Odom (Postal Attorney), for mediation regarding the complaint # DE-0353-12-0001-I-1, filed with the MSPB. Goodson was offered a settlement. Which she declined. Goodson opted to have a hearing, so that she could present her evidence.

On May 24, 2012, Goodson arrived with her witness and evidence to the hearing. Where she was informed that the Administrative Judge would not be holding a hearing. Instead, Goodson was offered a settlement agreement and release for

$7,000 as compensation for being out of work from September 2, 2011 to October 21, 2011. Goodson accepted this settlement. The job position offer was a Distribution Clerk on Tour 1. The USPS stated that the October 2011 assignment was "part of settlement agreement whereas she received money. (See ROI 0066) This settlement agreement was with Brian Odoms (Postal Counsel).

On July 30, 2013, Goodson received a letter of warning from Mary Buckley (Supervisor). It stated that there could be a possibility that Goodson could be terminated from employment. Because of not being in regular attendance. An investigative interview was conducted. And Goodson explained that because of the reassignment to Tour 1. Her health has suffered. And that a job position on Tour 3, would work better for her health. Goodson also stated that her FMLA case has been re-opened.

On October 28, 2013, Goodson became aware that Postal Support Employees (PSE) were still performing the job position that was rescinded from her on October 21, 2011. The job position that the USPS deemed "not a necessary task." In response to why these employees were doing "not a necessary task." Yvonne Rodriquez (Manager Distribution Operations) says that she uses PSEs as a supplemental force. Who are available to fill positions for employees who are sick or on vacation. These PSEs perform various duties including inputting data into mail device scanners and assisting expeditors. (See ROI 0012-14-00218-223). Later Goodson finds out that these PSE employees were being paid a higher pay grade as

expeditors, which was a Level 7. When Goodson performed the same job in 2011, she was paid grade Level 6.

On November 22, 2013, Goodson's settlement agreement position on Tour 1, was revoked. (See ROI 0066) This action placed Goodson as an unassigned regular. And this gave way to her being placed in an involuntary residual assignment that required qualifications and testing. This position was for Sales Service Associate/Window Clerk. Goodson received a letter stating that she was to be reassigned to a Window Clerk position. Char Ehrenshaft (Human Resource Manager), says that she had no knowledge of the November letter being sent. However, Ehrenshaft testified that the November letter was a placement letter and not a reassignment letter. Ehrenshaft says she had the union steward Lawanda Davis review the unassigned regulars and that she had no knowledge of regulations and policies. (See Affidavit Testimony Char Ehrenshaft). (Glen Erfman contradicts this statement. (Erfman states that Ehrenshaft places employees into job positions. And that she determines what the employees can perform. And the duties of those assigned positions. It was determined that Ehrenshaft gave Erfman a list of employees that she wanted placed. (See Affidavit Testimony Glen Erfman) Goodson had not the knowledge, skill or ability requirements for this Window Clerk position. This position required at least a year experience, which Goodson did not have. Later Susan Talbot (Western Area Resource Manager) questioned several management officials including Char Ehrenshaft, Glen Erfman, and Yvonne Rodriquez, about their decision of reassignment. Talbot asked

"why is the window clerk going on the residual vacancies? Are any of the unassigned regulars a level 7 with window clerk experience? If not, it shouldn't go on the list, as you don't make involuntary placements into higher levels." Shawn Weston (EEO/ADR/ Compliance) also added "honestly, I am confused by what you are doing, but technically, I guess if you have 5 customer service positions." Goodson was not in the level 7 pay grade and she did not have Window Clerk experience. Also, this decision of reassignment violated the Labor contract which states "involuntarily assignment with the senior employee, when there is more than one residual vacancy. The employee will be given an option and be awarded their choice based on seniority." Goodson was not given an option or choice. (See ROI 0023-0025.) The training for Window Clerk was on the clock. And it was mandatory that you qualify. Or you could be subject to firing, dismissal, or removal from the premises. Goodson failed in qualifying for the Window Clerk position. And remained an unassigned regular without a duty assignment. And without offer for accommodations. Goodson filed grievances with the union for placing limited duty employees into bid assignments, which violated labor contract laws. The USPS is obligated to replace rescinded assignments, with those with reasonable accommodations.

Through the next few years. The USPS continued to not accommodate Goodson's physical disability. On February 18th, 2015, Goodson provided medical documentation to the medical unit in the Administrative Building, per her primary care physician's recommendation. Her doctor recommended that due

to her hypertension and well as other health issues. A tour working daytime shifts or evenings shifts would be better suited to for Goodson's health issues. The USPS denied this request. March 2015, Goodson was still in the status as being a full time unassigned regular. Which placed Goodson in the power of management to place her in any involuntary assignment positions. This forced Goodson to bid on an assignment. Instead of being placed in an assignment position by management. Goodson was awarded a bid for Mark-Up Clerk bid # 71127034. Job posting 98850 on Tour 3 (2:30 – 11:30pm). Goodson provided medical certification to medical unit. And started her bid position at Holy Building. On the 5th day of training. Goodson was called into the office of Lorraine Pruett (Manager of Operations). Goodson was informed, that she would have to report back to the General Mail Facility.

On December 2015, Goodson was awarded bid #71423470, Mail processing Clerk SPSS Tour 3. And within 14 days this bid was disallowed. The actions of the USPS have forced Goodson to modify)her medical restrictions doctors' orders.

In conclusion, in the relevant background history accounted here. The United States Postal Service has a proven record of employee discrimination against Goodson. They have continuously violated the Americans with Disabilities Act, as amended, 42 U.S.C. §§ 12101. This is shown by the repeated rescinding of Goodson's job positions. And not making accommodations for her proven disability. The USPS personnel have also violated 42 U.S. Code § 1983. Civil action for

9

deprivation of rights. This is shown by proven evidence of certain persons in supervisory positions.

EXHIBIT B

Defendants: Meagan J Brennan (Postmaster General of the United States)

# Form Motion for Appointment of Counsel
## *(1) the nature and complexity of the action*

Plaintiff Goodson asserts that the United States Postal Service (USPS) has violated the Americans with Disabilities Act, as amended, 42 U.S.C. §§ 12101. When they did not accommodate her disability (on-the-jury). Goodson also asserts that the personnel of USPS has violated the 42 U.S. Code § 1983. Civil action for deprivation of rights

## *(4) the degree to which the interests of justice, including the benefits to the court, will be served by appointment of counsel:*
The appointment of counsel will help preserve the integrity of established Federal law of the Americans with Disabilities Act, as amended, 42 U.S.C. §§ 12101. And help solidify the rights of people with the 42 U.S. Code § 1983. Civil action for deprivation of rights

Other federal laws.

1.   42 U.S.C.S. §§ 1981

**Section 1981** race discrimination **claim** cannot survive without a contractual interest as its basis. ... To support such a **claim**, a plaintiff must allege that he is a member of a racial minority and

11

<u>1043, 27 Empl. Prac. Dec. (CCH) P32,251, 1 Am. Disabilities
Cas. (BNA) 273</u>

**Disability Discrimination, ADA Enforcement**
Equal Employment Opportunity Commission regulations require
federal agencies not to use any selection criterion that screens
out or tends to screen out qualified handicapped persons or any
class of handicapped persons unless the criterion, as used by the
agency, is shown to be job-related for the position in question.
29 C.F.R. § 1613.705. The test is whether a handicapped
individual who meets all employment criteria except for the
challenged discriminatory criterion can perform the essential
functions of the position in question without endangering the
health and safety of the individuals or others. If the individual
can so perform, he must not be subjected to discrimination. 28
C.F.R. §§ 1613.702(f), 1613.703

**3. Jurisdiction, Jurisdictional Sources**
**Section 1208(b)** of the **Postal Reorganization Act of 1970**
provides that suits for violation of contracts between the **United
States Postal Service** and a labor organization representing
**postal service** employees, or between any such labor
organizations, may be brought in any district court of the United
States having jurisdiction of the parties, without respect to the
amount in controversy. **39 U.S.C.S. § 1208(b).**

**1208(b)** a claim for **breach** of the collective bargaining

agreement under 39 U.S.C.S. § 1208(b).

**5. Rehabilitation Act of 1973, as amended, 29 USCS § 791**



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Office of Federal Operations**
**P.O. Box 77960**
**Washington, DC 20013**

Melissa M. Goodson, a/k/a
Leisa C.,[1]
Complainant,

v.

Megan J. Brennan,
Postmaster General,
United States Postal Service,
Agency.

Request No. 0520180502

Appeal No. 0120172272

Hearing No. 541-2014-00128X

Agency No. 1E-801-0006-14

<u>DECISION ON REQUEST FOR RECONSIDERATION</u>

Complainant timely requested that the Equal Employment Opportunity Commission (EEOC or Commission) reconsider its decision in EEOC Appeal No. 0120172272 (June 15, 2018). EEOC Regulations provide that the Commission may, in its discretion, grant a request to reconsider any previous Commission decision issued pursuant to 29 C.F.R. § 1614.405(a), where the requesting party demonstrates that: (1) the appellate decision involved a clearly erroneous interpretation of material fact or law; or (2) the appellate decision will have a substantial impact on the policies, practices, or operations of the agency. See 29 C.F.R. § 1614.405(c).

In her underlying complaint, Complainant, a Mail Processing Clerk, claimed that she was discriminated against on the bases of her sex (female), age (48), race (African-American), disability (shoulder strain and upper right disorder of the bursa tendons) and in reprisal for her prior protected EEO activity when:

1. On October 28, 2013 Complainant became aware that management was utilizing two employees to fulfill the duties for a position Complainant was told was no longer available in 2011; and

---

[1] This case has been randomly assigned a pseudonym which will replace Complainant's name when the decision is published to non-parties and the Commission's website.

2                                                        0520180502

> 2. On November 23, 2013, Complainant received a letter dated November 20, 2013, informing her that she was being reassigned.

The EEOC Administrative Judge (AJ) granted the Agency's motion for summary judgment. The AJ found that no discrimination occurred. With regard to claim (1), the AJ noted that the two employees being used to perform the duties of Complainant's prior modified assignment were Postal Support Employees, unlike Complainant who is a full-time regular employee. In terms of claim (2), the AJ found that Complainant proffered no evidence that she was treated differently from any other unassigned/unencumbered full-time regular employee, and that she also did not proffer evidence that the Agency's reason for attempting to place her in a residual vacancy was pretext for discrimination or reprisal. The AJ observed that Complainant wanted to be returned to the modified job position she held until January 2010. However, the AJ stated that Complainant did not proffer evidence that the modified duties comprised a full-time position.

In its final order, the Agency implemented the AJ's Decision. On appeal, the Commission affirmed the Agency's final order. We found that the preponderance of the evidence did not establish that Complainant was discriminated or retaliated against by the Agency as alleged.

In her request for reconsideration, Complainant contends that she established a prima facie case of reprisal. Complainant argues that she was a Mail Processing Clerk, grade level six, but that after filing an EEO complaint on October 28, 2013, she was reassigned on November 23, 2013, to a significantly different job with significantly different responsibilities. Complainant states she was reassigned to a grade level seven Sales Service Associate/Window Clerk position with required passing qualifications. Complainant states that she did not pass the test. According to Complainant, she should have been given a choice/option of reassignment based on seniority. Complainant maintains that a more suitable position for her would have been the vacancy for a level six Mark-Up Clerk position.

In response, the Agency asserts that Complainant did not identify any erroneous aspects of the Commission's previous decision and also did not argue that the Commission's decision will have a substantive impact on its policies, practices, or operations.

The Commission emphasizes that a request for reconsideration is not a second appeal to the Commission. Equal Employment Opportunity Management Directive for 29 C.F.R. Part 1614 (EEO MD-110), Chap. 9 § VI.A (Aug. 5, 2015); see, e.g., Lopez v. Dep't of Agric., EEOC Request No. 0520070736 (Aug. 20, 2007). Rather, a reconsideration request is an opportunity to demonstrate that the appellate decision involved a clearly erroneous interpretation of material fact or law, or will have a substantial impact on the policies, practices, or operations of the Agency. Complainant has not presented any persuasive evidence to support reconsideration of the Commission's decision. Complainant has not presented any evidence establishing that the Commission erred in finding that the AJ properly granted summary judgment in this matter.

*[handwritten: Filing For M File WAIVE FEE]*

3                                                                    0520180502

Moreover, the Commission finds that Complainant has not presented any evidence to support reconsideration of the Commission's finding that he failed to show that she was subjected to discrimination or reprisal.

After reviewing the previous decision and the entire record, the Commission finds that the request fails to meet the criteria of 29 C.F.R. § 1614.405(c), and it is the decision of the Commission to DENY the request. The decision in EEOC Appeal No. 0120172272 remains the Commission's decision. There is no further right of administrative appeal on the decision of the Commission on this request.

## COMPLAINANT'S RIGHT TO FILE A CIVIL ACTION (P0610)

This decision of the Commission is final, and there is no further right of administrative appeal from the Commission's decision. You have the right to file a civil action in an appropriate United States District Court **within ninety (90) calendar days** from the date that you receive this decision. If you file a civil action, you must name as the defendant in the complaint the person who is the official Agency head or department head, identifying that person by his or her full name and official title. Failure to do so may result in the dismissal of your case in court. "Agency" or "department" means the national organization, and not the local office, facility or department in which you work.

## RIGHT TO REQUEST COUNSEL (Z0815)

*[handwritten: Public Defenders filing fee]*

If you want to file a civil action but cannot pay the fees, costs, or security to do so, you may request permission from the court to proceed with the civil action without paying these fees or costs. Similarly, if you cannot afford an attorney to represent you in the civil action, you may request the court to appoint an attorney for you. **You must submit the requests for waiver of court costs or appointment of an attorney directly to the court, not the Commission.** The court has the sole discretion to grant or deny these types of requests. Such requests do not alter the time limits for filing a civil action (please read the paragraph titled Complainant's Right to File a Civil Action for the specific time limits).

FOR THE COMMISSION:

*[signature: Carlton M. Hadden]*

Carlton M. Hadden, Director
Office of Federal Operations

*[handwritten: Colorado Judicial Branch Website]*

October 31, 2018
Date

4                                    0520180502

## CERTIFICATE OF MAILING

**For timeliness purposes, the Commission will presume that this decision was received within five (5) calendar days after it was mailed.** I certify that this decision was mailed to the following recipients on the date below:

Melissa M. Goodson
5233 Ursula Way
Denver, CO  80239

John Valente
PO Box 83
Mastic Beach, NY  11951

U.S. Postal Service
NEEOISO - Appeals
U.S. Postal Service
PO Box 21979
Tampa, FL  33622-1979


October 31, 2018
Date


Compliance and Control Division